## Grand Lodge Ancient Order of United Workmen et al. v. Belcham.

1. *Life Insurance—Application—Construction of Questions and Answers.*—The application to become a member in a beneficiary insurance association, contained the following: "I certify that the answers made by me to the questions propounded by the medical examiner of this lodge, which are attached to this application and form a part thereof, are true." Among other questions and answers the application contained the following:

"To what extent does the person use alcoholic stimulants? A. None."

"To what extent does the person use tobacco? A. Moderate."

"To what extent does the person use opium? A. None."

"Are there any inclinations that would lead you to suppose that the applicant leads or has led other than a sober and temperate life? A. None."

"Do you consider the applicant's life to be safely insurable and do you recommend that a policy be granted? A. Yes."

The answers were made by the medical examiner. *It was held* that the answers thus made might be regarded as made by the applicant with this qualification, that he had the right to rely to some extent upon the construction given by the examiner to the various questions, and the answers which the examiner made from the information he obtained by his questions to the applicant.

2. *Habitual Use of Intoxicating Liquor.*—Taking the several questions relative to liquor, tobacco and opium, embraced in the general interrogatory, it must be apparent that a liberal and reasonable construction should be applied. It can not be supposed it was understood that the applicant had never taken liquor or opium and that he was ignorant of the taste of either. Such a construction, literally applied,

would exclude the great mass of men and would reduce the ranks of insurance organizations to an unprofitable minimum.

3. *The Moderate Use of Tobacco Implies a Fixed Habit.*—Ordinarily the moderate use of tobacco implies a fixed habit. As a rule the system does not readily tolerate and it is only after repeated trials that one can moderately use it. Hence a habit more or less fixed is implied from the statement of moderate use.

4. *Moderate Use of Liquor.*—In regard to liquor it is otherwise, the taste of it is not usually repugnant and one may occasionally indulge in it without having acquired a habit of doing so.

Memorandum.—Action upon a beneficiary certificate insuring the life of appellee's husband. Appeal from a judgment of the McLean County Circuit Court; the Hon. THOMAS F. TIPTON, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892, and affirmed. Opinion filed October 17, 1892.

## APPELLANTS' STATEMENT OF THE CASE.

This suit was brought by appellee to recover $2,000 and interest, being the amount of a beneficiary certificate insuring the life of her husband, Thomas W. Belcham. Appellants defend on three principal grounds, presented by appropriate special pleas.

The first ground is a denial of joint liability made by a sworn plea filed by appellants.

The second ground is, that Thomas W. Belcham was not a member of appellant lodges, but had during his life, on January 31, 1891, been expelled for habitual drunkenness and for being in the lodge room intoxicated. It was replied to this plea that he was insane when expelled. On trial it appeared he had for a long time been habitually drunk, and some witnesses thought his drunkenness had made him insane, while others thought he was simply and only drunk, and not insane.

The third ground is, that, on September 7, 1878, when appellee's husband, Thomas W. Belcham, gained admission to appellant lodges and procured the certificate of insurance sued on, he did so by false, material statements and concealments in a written application for membership and beneficiary insurance, which statements he made part of his insurance certificate; and, being false, fraudulent and mate-

rial, his insurance was thereby, as claimed, rendered null and void, by the constitution and by-laws of appellants and under the law of insurance. The jury gave appellee a verdict, and the court rendered judgment thereon for the full amount $2,115.

## APPELLANTS' BRIEF.

Bouvier defines an habitual drunkard to be "a person given to inebriety or the excessive use of intoxicating drink, who has lost the power or will, by frequent indulgence, to control his appetite for it." In State v. Pratt, 34 Vt. 323, it was said: "An habitual drunkard is one who is in the habit of getting drunk, or is commonly, or frequently so." In Murphy v. People, 90 Ill. 59, it is held that a person who is in the habit of getting intoxicated is one "who has the involuntary tendency to become intoxicated, which is acquired by frequent repetition."

Webster says, a sober man is "one not intoxicated or excited by spirituous liquor; as, the sot may at times be sober." A most eminent court says a man may be an habitual drunkard and yet be sober for days and weeks together. Ludwick v. Commonwealth, 18 Pa. St. 174.

JOHN T. LILLARD, attorney for appellants.

## APPELLEE'S BRIEF.

Answers to questions in applications for membership in benefit societies are not warranties, but representations. Bacon Ben. Soc., Sec. 216; N. W. B. & M. A. Ass'n v. Cain, 21 Ill. App. 471; Continental Life Ins. Co. v. Rogers, 119 Ill. 484; The I. M. B. Society v. Winthrop, 85 Ill. 537.

The question, the answer to which is alleged to have been willfully false, was of such a character as to direct his mind to the point as to whether he had formed a habit of drinking and nothing more. Webster defines "Use (v. t.) To practice customarily; to accustom; to habituate." In a case where the principal question was, did the insured "use any intoxicating liquors or stimulants?" it was held by the court

that it did not direct the mind to anything but a customary or habitual use. Van Valkenburg v. A. P. L. Ins. Co., 70 N. Y. 605.

The court should construe the rules and regulations of such societies liberally, to effect the benevolent object of their organization. Niblack on Ben. Soc., 391–2; Supreme Lodge v. Schmidt, 98 Ind. 374; Supreme Lodge v. Abbott, 82 Ind. 1; Erdman v. Order, etc., 44 Wis. 376.

Forfeiture of membership and the rights incident to it are not favored, and the construction should be such as to avoid the forfeiture, if the language employed will admit of such construction. Connolly v. Shamrock B. Society, 43 Mo. App. 283.

Habitual drunkenness, without a trial, and suspension or expulsion for that cause, does not work a forfeiture of beneficiary's rights. As before stated, this case is not like Royal Templars v. Curd, 111 Ill. 284. It is like the case of High Court I. O. O. F. v. Zak (Ill. Sup. Co.), 26 N. E. Rep. 593.

Edward Barry and John E. Pollock, attorneys for appellee.

Opinion of the Court, the Hon. George W. Wall, Judge.

This suit was brought by appellee against appellants to recover $2,000 and interest upon a beneficiary certificate insuring the life of her husband, Thomas W. Belcham.

The plaintiff recovered and the defendants bring the record to this court by appeal.

Two questions of fact were raised by the pleadings and contested upon the trial.

1st. Did said Thomas W. Belcham procure the certificate by a false and material statement in his written application for membership in reference to his use of intoxicating liquor?

2d. Was he insane at the time he was expelled from the lodge upon the charge of drunkenness?

These questions were solved in favor of the appellee.

It is unnecessary to set out the details or even the substance of the evidence upon the issues thus presented.

We are of opinion there was enough in the proofs to sustain the conclusion reached and that there is no sufficient reason for interfering with the judgment upon the errors assigned as to this branch of the case.

The only question of law that we care to notice arises upon the construction given by the court to the questions and answers attached to the application referring to applicant's use of intoxicating liquor.

The application contained the following language: "I certify that the answers made by me to the questions propounded by the medical examiner of this lodge which are attached to this application and form a part thereof, are true."

What questions were propounded by the medical examiner does not appear, but his report which is attached to the application contains among others the following questions and answers:

16. To what extent does the person use alcoholic stimulants? A. None. (b) To what extent does the person use tobacco? (b) Moderate. (c) To what extent does the person use opium? (c) None. (d) Are there any indications that would lead you to suppose that the applicant leads or has led other than a sober and temperate life? (d) None.

23. Do you consider the applicant's life to be safely insurable and do you recommend that a policy be granted? A. Yes.

24. Are the above answers made from personal examination and from questions propounded to the applicant? A. Yes.

The answers thus made by the medical examiner may be regarded as made by the applicant with this qualification, that he had the right to rely to some extent upon the construction given by the examiner to the various questions, and the answers which the examiner made from the information he obtained by his questions to the applicant. Among the questions and answers contained in this report are a number relating to the physical condition of the party, e. g., the condition of the pulse, the action of the heart, breathing, expectoration, the indications of disease of the nervous

system, of the lungs, etc., such as are usual in examinations for life insurance. As to all these the examiner may be trusted to form his professional opinion from what he can discover by examination and by such questions as he may deem proper. If the applicant states the facts according to his best knowledge and recollection he will not be prejudiced by the erroneous conclusion reached by the examiner.

Taking the several questions relating to liquor, tobacco and opium embraced under the general interrogatory No. 16 all together, it must be apparent that a liberal and reasonable construction should be applied to them and to the answers thereto.

It can not be supposed it was understood that the applicant had never taken liquor or opium and that he was ignorant of the taste of either. Such a construction literally applied would exclude the great mass of men and would reduce the ranks of any insurance organization to an unprofitable minimum.

The question to what extent one uses liquor is rather loose and indefinite. We think the company, propounding such a question, should not be permitted to give it a close and technical meaning, and that in view of the sub-questions the fair and reasonable construction is to imply something more than an occasional or incidental use. There must be to some extent a habit, or a custom in that regard. So it was held in Van Valkenburg v. A. P. L. Ins. Co., 70 N. Y. 605. Hardly any ordinary person reading those questions and answers would suppose that an occasional, not a customary use was intended either by the questions or the answers.

Counsel for appellant argue that there is great significance in the answer *none* in regard to liquor, and *moderate* in regard to tobacco, and that an implication highly unfavorable to the applicant is to be drawn therefrom.

We think not; ordinarily, the moderate use of tobacco implies a fixed habit. As a rule, the system does not readily tolerate it, and it is only after repeated trials that one can moderately use it. Hence, a habit more or less fixed is im-

plied from the statement of moderate use. Not so in regard to liquor. The taste of it is usually not repugnant, and one may occasionally indulge in it without having acquired a habit of doing so.

The Circuit Court, in its rulings upon the admission of evidence and in giving and refusing instructions, evidently entertained the views above expressed as to the true construction of the application in this respect.

We are of opinion that no substantial error has intervened and that, therefore, the judgment should be affirmed.